**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| Thomas Hibdon, et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:14-cv-00591-PJM |
| | ) | |
| Safeguard Properties, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR
RECONSIDERATION**

Plaintiffs Thomas Hibdon and Robert C. Burns, Jr., ("Plaintiffs") hereby submit this

Reply to Defendants' Opposition to Motion for Reconsideration and states as follows:

**BACKGROUND**

Plaintiffs' Complaint against Defendants Safeguard Properties, LLC ("Safeguard"), Bank

of America, N.A. ("BANA") and CitiMortgage, Inc. ("Citi") (collectively "Defendants") alleged,

*inter alia*, claims under the Maryland Consumer Protection Act ("MCPA"), Maryland Code

Ann., Commercial Law Article § 13-301, *et seq*. for engaging in unfair trade practices that the

statute prohibits.  Defendants filed motions to dismiss, which Plaintiffs opposed, and this Court

held a hearing on Defendants motions on November 13, 2014.  The Court committed a clear

error of law when it dismissed Plaintiffs' claims under the MCPA by failing to apply binding

precedent.  For the reasons discussed below, Defendants' arguments in their Opposition to the

Motion for Reconsideration fail.

1

**ARGUMENT**

I.      **Defendants Do Not Refute Plaintiffs' Argument that the Court Made a Clear Error of Law in Holding that the MCPA Requires Deceptive Conduct for a Violation to Occur.**

Defendants devote scant attention to Plaintiffs' argument that the Court made an error of law in deciding that in order for a violation of the MCPA to occur, Defendants must have engaged in some deceptive conduct.  Moreover, Defendants do not, and cannot, argue that the Court is free to ignore binding precedent from the Court of Special Appeals.  Instead, Defendants argue that: (1) the *Legg* decision only discusses what an injury is under the MCPA and does not change the fact that the MCPA requires deceptive acts; (2) the acts that Plaintiffs describe in their Complaint are not trade practices under the MCPA; (3) Plaintiffs could have somehow avoided the acts at issue by exercising market choice; and (4) Plaintiffs have offered no new arguments or evidence.  All of Defendants' arguments fail.

One, a motion for reconsideration does not require new arguments or evidence when raising clear errors of law.  A motion for reconsideration may be granted in three situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; <u>**or**</u> (3) to correct a clear error of law or prevent manifest injustice." *Flores v. Ethicon, Inc*., 563 Fed. Appx. 266, 271 n.11 (4th Cir. 2014).[1]  Two, parties *cannot* raise new arguments in connection with a motion for reconsideration.  It is axiomatic that arguments raised for the first time in connection with a motion for reconsideration are generally deemed to be waived and are not properly preserved for appeal.  *Id*. at 270 n.8; *United States v. Foreman*, 369

---

[1] The cases that Defendants cite to in Section I of their Opposition to Motion for Reconsideration do not involve errors of law.  *See* DE # 75 at 3, (citing *Pritchard v. Wal-Mart Stores, Inc.*, 3 Fed. Appx. 52, 53 (4th Cir. 2001) (citation omitted); *Finkelstein v. Mardkha*, 518 F. Supp. 2d 609, 611 (S.D.N.Y. 2007); *In re World Trade Center Disaster Site Litig.*, No. 21 MC 100 (AKH), 2008 WL 2704317, at *1 (S.D.N.Y. July 10, 2008)).

F.3d 776, 796 n.12 (4th Cir. 2004) (citing and quoting *Mungo v. Taylor*, 355 F.3d 969, 978 (7th

Cir. 2004) and *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1526 (1st Cir.

1996))(Gregory, J. concurring and dissenting in part)).

      Finally, none of Defendants' remaining arguments were raised in their briefing on the

motions to dismiss meaning *their* arguments have now been impermissibly raised for the first

time in connection with a motion for reconsideration.  *E.g., Flores, supra*; *Forman, supra*.

Defendants' discussion of the MCPA, as a stand-alone claim (not derived from the MCDCA

claim), never analyzed or discussed in any meaningful way, the unfairness analysis required by

*Legg*.  In its Motion, Safeguard only addressed deception by discussing misrepresentations and

omissions. DE #26 at 18-19.  On Reply,[2] Safeguard only argued that it was not liable for its sub-

contractors' conduct which was otherwise authorized.  DE 45 at 17.  BANA too only addressed

deception by discussing misrepresentations and omissions in both of its briefs.  DE #28-1 at 17-

18 and DE #47 at 10-11. While Citi *did* identify the *Legg* test for unfairness in its Motion, it

nevertheless only analyzed deception by discussing misrepresentations and omissions. DE #22-1

at 16-17. On Reply, Citi only addressed fraud and Rule 9(b). DE #48 at 15.  In none of these six

briefs did any defendant raise arguments (1)-(3) above now raised in connection with the instant

motion.  Thus, the Court should reject them *in toto*. However, even if timely and appropriate

made, Defendants' merits-based arguments nevertheless fail.

---

[2] Plaintiffs do not waive or otherwise concede that Defendants could have raised new arguments in their reply briefs.  It is axiomatic that Courts may not consider new arguments in support of a motion raised for the first time by reply.  *E.g., Cavallo v. Star Enter.,* 100 F.3d 1150, 1152 n. 2 (4th Cir. 1996) (holding argument not raised in opening brief, but raised for the first time in reply brief was waived).

**A.  There is a Separate Cause of Action for Unfair Trade Practices under the MCPA in Maryland.**

What Defendants cannot evade is that Maryland recognizes a cause of action under the MCPA for unfair trade practices that is wholly distinct from deceptive trade practices.  DE# 36 at 4-5 (citing *Consumer Protection Division v. Luskin's, Inc.*, 120 Md. App. 1, 30 (1998), *Legg v. Castruccio*, 100 Md. App. 748, 768 (1994)).  Plaintiffs will not belabor the Court by repeating arguments they have already made in their Motion for Reconsideration.  Briefly, under the *Legg* and *Luskin's* cases, the MCPA imposes liability on a defendant for unfair trade practices that cause substantial injury to consumers which involve no deception or reliance on the part of the plaintiff.  *See Legg*, 100 Md. App. at 768; *Luskin's*, 120 Md. App. at 30; *see also Sager v. Housing Comm'n of Anne Arundel* Co., 957 F. Supp. 2d 627, 642 (D. Md. 2013) (citing *Legg*).

Defendants' argument that the *Legg* case only "speaks to what counts as an injury . . . under the MCPA" is disingenuous at best, and wholly ignores the holding of *Luskin's.*  In *Luskin's,* the Court of Special Appeals specifically noted that that "*Legg* was the first case in which a Maryland court split unfairness and deception into two distinct bases for action." *Luskin's*, 120 Md. App. at 30.  Defendants not only utterly ignore the binding Court of Special Appeals decisions  they also ignore *Sager,* which faithfully applied both  decisions in holding that a plaintiff alleged a claim for unfair trade practice under the MCPA even when the practice in question was not deceptive. *See Sager,* 957 F. Supp. 2d at 643.

Whether the Court looks to binding precedent from the Maryland Court of Special Appeals, or to persuasive authority from sister court,  Plaintiffs' allegations of unlawful entry into their home and/or the theft of the their belongings constitute violations of consumer unfair trade practices statutes.  *See Alqaq v. CitiMortgage, Inc*., 2014 U.S. Dist. LEXIS 59366, *12 (N.D. Ill. Apr. 29, 2014) (trespass and theft of personal property occurring in the course of the

business of winterizing and securing foreclosed property "clearly meets the test of the unfairness standard under the [Illinois Consumer Fraud and Deceptive Business Practices Act]"); *Bywater v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 37925, 11 (N.D. Ill. Mar. 24, 2014) (same); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013), *Love v. Pressley*, 34 N.C. App. 503 (1977).

Like the MCPA, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, prohibits *either* deceptive or unfair trade practices. *See Hill*, 946 F. Supp. 2d at 827 (when the plaintiffs stated a claim for trespass against a property preservation company under Illinois common law, they stated a claim under the unfairness prong of the ICFA while failing to allege a claim for deceptive practices under the act). Considering the fact that the IFCA is expressly based on section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)) , as is the MCPA, the decisions from the United States District Court for the Northern District of Illinois are particularly persuasive in this instance.  *See* 815 ILCS 505/2; Md. Code Ann., Comm. Law Art. § 13-105.  The facts supporting the common law claims upheld by the Court also constitute an unfair trade practice under the MCPA.

Contrary to Defendants' argument that the Court fully considered the *Legg* test for unfair trade practices under the MCPA, the Court's reasoning in dismissing Plaintiffs' claims for unfair trade practices revolved almost exclusively around the Court's mistaken belief that the statute requires deceptive conduct.  In response to argument by Plaintiffs' counsel that the course of Defendant Safeguard's conduct amounted to unfairness under the MCPA, the Court responded

> Well . . . I don't agree with you.  I think . . . that if you take this concept . . . of eiusdem generis,[3] as they call it, that usually you

---

[3] In statutory construction, the "ejusdem generis rule" is that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are

> try and stay within the same tenor of content that's set forth in the
> statute.  You don't really get to the kind of activity of entering and
> destroying property and causing – allowing property to be
> destroyed.  **It's got to be some sort of deception in it.**

11/13/2014 Transcript of Oral Argument at 113:6-15 (emphasis added).  However, this analysis

was specifically rejected by *Legg* as it analyzed the MCPA's history rooted in the FTC Act.

*Legg,* 100 Md. App. at 766-68 (analyzing the FTC Act, "the Supreme Court thus put its stamp of

approval on the Commission's evolving use of a consumer unfairness doctrine not moored in the

traditional rationales of anticompetitiveness or deception.").

    This Court further stated that, in its opinion, "deceptive and unfair practices are much

closer.  They are not really discussed disjunctively.  There is no separate interpretation of what

'unfair practice' is, and in my view, it's got to be some variation of either the outright fraud or

misrepresentation by omission or commission.  And it just isn't there."  11/13/2014 Hrg. Tr. at

113:16-22.  This ignored that the statute *does* define trade practices in the disjunctive: unfair *or*

deceptive.  Moreover, by invoking eiusdem generis, a *narrowing* principle of statutory

construction, the Court not only inappropriately usurped and overruled the Court of Special

Appeals in construing the MCPA on this point, not only rendered the word "unfair" superfluous

and redundant,[4] it also rejected the long-standing principle that the MCPA must be *liberally*

construed in order to achieve its consumer protection objectives. *See, e.g., State v. Cottman*

*Transmissions Sys., Inc*., 587 A.2d 1190 (Md. Ct. Spec. App. 1991); §13-105.  Moreover, it

evaded the plain wording of the statute which states that deception is not required to state a claim

under the MCPA.  *See* §13-302. The Court's decision was a clear error of law and the Court

should grant Plaintiffs' Motion for Reconsideration. *See Cezair v. JPMorgan Chase Bank, N.A*.,

---

not to be construed in their widest extent, but are to be held as applying only to persons or things of the
same general kind or class as those specifically mentioned.  http://thelawdictionary.org/ejusdem-generis/

    [4] *See* discussion of the principles of statutory construction at DE #68-1 at 3.

2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014); *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998).

### 1.   The MCPA Renders Defendants' Conduct Unfair

The *Legg* test for unfair trade practices requires pleading a (1) substantial injury; (2) that is not outweighed by any countervailing benefits to the consumer or to competition that the practice produces; and (3) the injury is not the type that a consumer could reasonably have avoided. *Legg*, 100 Md. App. at 768; *Sager*, 957 F. Supp. 2d at 642. Injury to the consumer is the primary (but not sole) focus in a MCPA "unfairness" analysis, which explicitly permits courts to "statutes or other sources of public policy to affirm that a practice is unfair." *Legg*, 100 Md. App. at 769; *Sager*, 957 F. Supp. 2d at 643 n.14.  Implicitly conceding that Plaintiffs have alleged, and the Court has found, a substantial injury and that their conduct has no countervailing benefits,[5] Defendant only argue that Plaintiffs claims under the MCPA are negated by the fact that they had a choice to pursue lenders that utilize different contractual provisions.  *See* DE #75 at 8 n.3, 9-10.

The principle underlying the reasonably avoidable injury test is that consumer choice is generally thought to guide the marketplace, such that the marketplace is "self-correcting." *Legg,* 100 Md. App.  at 769 (citations and quotations omitted). Outside intervention is "viewed as necessary only when consumers are prevented from effectively making their own decisions." *Id.*; *Sager*, 957 F. Supp. 2d at 643.  "The purpose of such action is to halt some form of seller

---

[5] By contrast, in *Benson v. State,* 2004 WL 5190063 (Balt. Cir. Ct. June 23, 2004), the telephone service at issue was not a sale of a consumer good or service.  Thus, it was not a trade practice covered by the MCPA.  Regardless, in dicta, the court stated that the plaintiff had failed to allege significant harm. Moreover, the commissions derived from the phone system provided valuable service to the inmates and their families.  Finally, the families could avoid the commission by simply rejecting the collect calls. *Burch v. United Cable Television of Baltimore Ltd. Partnership*, 1997 WL 34703570 (Balt. Cir. Ct. 1997) was a post-trial decision which applied evidence to the MCPA unfairness element and found the class members could have reasonably avoided the late fee.  Here, Plaintiffs are merely at the pleading stage and the Court has no evidence before it.  Moreover, as discussed below, Plaintiffs had no means of avoiding paragraphs 7 and 9 in their Deeds of Trust, or Defendants' choice to hire Safeguard.

behavior that unreasonably creates or takes advantage of an obstacle to the free exercise of

consumer decision making." *Id.*

At issue here are standardized Deeds of Trust which contain identical terms in paragraphs

7 and 9—the paragraphs that give rise to obligations and liabilities at issue here. 11/13/2014 Hrg.

Tr.  at 111:12-15; Compl. ¶270; DE #26-2; DE #26-3. The gravamen of Plaintiffs' MCPA

claims, however, has little to do with the remaining terms of the standardized form mortgage

agreements used by lenders in the industry.  While Plaintiffs may be able to negotiate and

compete on purchase price, interest, title insurer, etc., as Safeguard admitted to the Court in

connection with its motion to dismiss, paragraphs 7 and 9 are mandated by the U.S. Department

of Housing and Urban Development.

> In fact, mortgagees are *required* by federal regulations to inspect properties in
> default, and to secure and preserve defaulted properties that have been abandoned.
> For example, the U.S. Department of Housing and Urban Development ("HUD")
> requires that, for all properties insured by the Federal Housing Administration,
> "[w]hen a mortgage is in default because a payment was not received within 45
> calendar days of the due date of the missed payment, and efforts to reach the
> mortgagor by telephone or correspondence have proven unsuccessful, the
> mortgagee must make an inspection to determine if the property is vacant or
> abandoned.
>
> Given these and other legal requirements, mortgage agreements and deeds of trust
> generally provide that lenders and their agents will have the right, upon default, to
> inspect and enter the mortgaged property, in order to assess, protect, secure, or
> repair it.

DE #26 at 4-5 (emphasis in original).  Thus, Defendants are estopped from contradicting a prior

judicial admission, and the terms at issue here are non-negotiable terms of adhesion in all such

real estate contracts.  As such, under *Sager,* there is "an obstacle to the free exercise of consumer

decision making."  *See Sager*, 957 F. Supp. 2d at 643.

Plaintiffs' claims arise from the fact that the Servicer Defendants knowingly employed

Safeguard--an agent with a long track record of wrongly breaking into homes, stealing personalty

8

and damaging property--as part of an unfair and unlawful self-help scheme. *See, e.g.* D.E. #1 at ¶¶ 107, 111, 150, 152; *cf. Nickens v. Mount Vernon Realty Group, LLC,* 429 Md. 53, 72, 79 (Md. 2012). Even if the industry did not use standardized mortgage agreements, there is no amount of consumer discretion or market choice that Plaintiffs' could have utilized to avoid Defendants' wrongful choices and actions. When servicers and their agents engage in such intentionally unfair and unlawful acts, the free market cannot function to prevent harm to consumers because consumers cannot control whether such actions will occur. Thus, the MCPA *must* apply in such situations to protect consumers "where the free market ha[s] failed." *See Legg*, 642 A.2d at 918, 100 Md. App. at 772. Thus, Defendants may be held liable under the statute.

Moreover, the *Servicer Defendants* contracted with Safeguard. Plaintiffs had no prior relationship with Safeguard, did not approve of the use of Safeguard, and otherwise had no role in the Servicer Defendants' choice to use Safeguard. Simply put, Plaintiffs had no ability whatsoever to negotiate away from Safeguard and its subcontractors. In fact, when they did contact Defendants to halt Safeguard's entry into their homes, Defendants ignored Plaintiffs' choice and order and invaded their homes anyway. Compl. ¶¶ 104-05, 107, 113b, 159-60, 166, 176-77. Thus, the trade practices of Safeguard and the Servicer Defendants are precisely an area of the economy that "is not strongly guided by consumer choice" that falls within the purview of the MCPA. *See Sager*, 947 F. Supp. 2d at 643.

### B.   The Court Determined that Safeguard's Policy and Procedure, as Alleged in Plaintiffs Complaint, are Trade Practices under the MCPA

Plaintiffs alleged that Defendants were merchants engaging in trade practices in Maryland which violated the MCPA in various ways—including unfairness. Compl. ¶¶ 233-235. Defendants claim that the Court, by attempting to delve into what constituted an "unfair" practice under the MCPA, only found that there was injury and not that there was a "trade

practice" under the statute at all.  DE # 75 at 8.  Defendants actually argue that the Court determined Defendants' tortious acts were not trade practices. *See id*. at 8-9. This argument abuses not only the record but common sense.

If Defendants mean to argue that the "alleged policy of entry into a dwelling, followed at some point by a tort" does not "amount[] to trade-practice conduct that the MCPA contemplated," DE #75 at 8, then they ignore a common sense definition of term "trade practice."  *See* http://www.merriam-webster.com/dictionary/trade%20practice  (A "trade practice" is defined as an operating policy or a business procedure).  They also fail to cite to any law that would narrowly construe Defendants' self-help scheme away from the definition of "trade practice."  Defendants further ignore the statute's explicit language making it applicable to all consumer contracts, § 13-101.1, like a real estate contract.  *Legg,* 100 Md. App. 757. Defendants are persons and merchants who provide consumer services and fall under the MCPA. *See* § 13-101(d)(1), (g)(1), (h) (defining consumer services, merchant and person respectively in a manner that applies to Defendants).  Finally, the Court characterized Defendants' acts as commercial in nature.  *See* 11/13/2014 Hrg. Tr.  At 99:6-20.

The transcript of the November 13, 2014 hearing plainly shows that the Court assumed, correctly, for the purposes of inquiring into what constitutes an *unfair* act under the MCPA, that Safeguard was engaged in commercial activity and a trade practice.  *See id*.  That is because the extension of credit, and the servicing of such extension, is a trade practice recognized by the statute.  §13-303 (1), (4)-(5). The Court explained that it was trying to understand "what would be an unfair practice against a consumer where, *in connection with the debt*, but not by a debt collector, this kind of activity happens."  *See id*. at 100:4-7 (emphasis added).  The Court presumptively acknowledged that Safeguard's activities were perpetrated in connection with the

10

extension of consumer credit, bringing its actions within the purview of the MCPA.  The Court

in no way discussed or questioned that Safeguard's acts were "trade practices."  *See* Transcript of

Oral Argument at 99:6-20, 100:4-7.  The portions of the transcript that Defendants cite to support

their contention that the Court determined that Safeguard's acts were not trade practices *do not*

*even mention the term "trade"* much less hold that Defendants' conduct in extending credit and

using an unlawful self-help scheme was not a trade practice.  *Cf.* DE # 75 at 8-9.  Instead, the

Court was clearly trying to determine what an *unfair* trade practice is under the MCPA as

opposed to a *deceptive* one.  Because the Court determined that the acts in question were

commercial in nature, Defendants' argument that Plaintiffs have not alleged any trade practices,

fails.

　　　　Finally, the MCPA defines "Unfair or deceptive trade practice" as having "the meaning

stated in Subtitle 3 of this title." § 13-101(k).  Subtitle 3, or §13-301 generally and subsection

(14)(i) specifically, leads the Court back to *Legg*, *Luskin's*, and *Sager* in defining an unfair trade

practice that constitutes a violation of "this title."  §13-301(14)(i).

## II.　Defendants' Argument that Maryland Case Law Prevents Plaintiffs from "Converting" Torts into MCPA Claim is Precluded by the Statute, Legislative Purpose, Implementing Case Law and the *Eerie* Doctrine.

　　　　In enacting the MCPA, the "General Assembly [was] concerned that public confidence in

merchants offering goods, *services*, *realty*, and *credit* [was] being undermined…" *Id.* at §13-

102(b)(2)(emphasis added).  Thus, the General Assembly enacted the MCPA to "take strong

protective and preventive steps to investigate *unlawful consumer practices*, to assist the public in

obtaining relief from *these practices*, and to prevent *these practices* from occurring in

Maryland."  *Id.* at §13-102(b)(3)(emphasis added); *see also* §13-103(a); §13-105.[6]  As *Legg*

---

[6] Defendants cite to the use of the word "deceptive" in § 13-102(a)(1) to stem the tidal wave of
authority (statutory, legislative intent, and case law) and argue that "deception" is the only avenue of

recognized, courts are free to look to "statutes or other sources of public policy to affirm that a practice is unfair." *Legg*, 100 Md. App. at 769.  Thus, tort law can serve as an "other source" making common law claims evidence or support for a violation of the unfair prong possible.

Defendants, however, argue that the MCPA is limited to deceptive acts which other laws do not reach.  Thus, contrary to the stated purpose of the statute as providing broad remedial measures to supplement existing law, Defendants argue that the MCPA is a narrow, gap coverage legislation instead. However, the Court of Appeals has already rejected this argument when it found that "the Legislature's purpose in enacting the Consumer Protection Act was to *supplement* existing federal and state laws…" *Consumer Protection Div. Office of Attorney Gen. v. Consumer Pub. Co*., 304 Md. 731, 761 n.11 (Md. 1985)(emphasis added).

Moreover, they argue, since "trespass, conversion, negligence, or breach of contract" are not enumerated predicates found in §13-301(14)(ii)-(xxiv), then those claims cannot serve as predicate for an MCPA claim.  *See* DE #75 at 50.  Of course, this argument narrowly and notably omits references to §13-301(14)(i) which provides for a cause of action if a person generally violates "this title." Again, this leads the Court back to *Legg*, *Luskin's*, and *Sager* in defining how an unfair trade practice violates "this title."  But more to the point, even if Defendants' argument was not unnecessarily myopic, nothing precludes a finding that *facts which support* these common law claims can *also* support an MCPA unfairness claim.

Defendants' reliance on *Citaramanis v. Hallowell*, 328 Md. 142, 150 (1992) and *Lloyd v. Gen Motors Corp.,* 397 Md. 108, 140 (2007), to argue *by inference* that these cases stand for the proposition that the MCPA does not include ordinary torts as a predicate violation of the unfair prong of the MCPA is misplaced and irrelevant.  *See* DE # 75 at 4-5.  Neither *Citaramanis* nor

---

recovery under the MCPA.  DE #75 at 6 (incorrectly citing to §13-102(b)(1)).  However, that very provision was cited by *Legg* in fashioning the unfairness prong of the MCPA. *Legg*, 100 Md. App. at 773.

*Lloyd* holds that the existence of other tort claims preempts an MCPA claim; nor could they

since the General Assembly explicitly enacted the MCPA as a *supplement* to existing state and

federal causes of action and laws: the "General Assembly recognizes that there are federal and

State laws which offer protection in these areas, especially insofar as *consumer credit practices*

are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely

known or adequately enforced."  § 13-102 (a)(2) (emphasis added); *see also Consumer Pub. Co,*

*supra*.[7]

     Even if the express language of the statute not requiring deception, and the language of

the General Assembly providing broad consumer protections, was insufficient, the Court is

bound by the *Eerie* doctrine to follow the unambiguous holdings of the *Legg* and *Luskin's*

decisions.  *See Hicks v. Feiock,* 485 U.S. 624, 630 n. 3 (1988).  Defendants' citation to

*Citaramanis* and *Lloyd*[8] as limitations on the reach of the MCPA to the regulation of deceptive

---

[7] Moreover, *Citaramanis* dealt with plaintiffs who had filed suit under the MCPA's deceptive practices prong raising as a predicate a technical violation of Howard County licensing requirements while alleging no actual injuries. *See Citaramanis*, 328 Md. at 150. The Court's mention that the MCPA was intended to provide plaintiffs with claims for more non-traditional violations of consumer rights was within the context of holding that the statute requires actual injury for plaintiffs to recover damages. *See id*. at 152-54. The Court in no way limited the scope of the MCPA (nor could it) to deceptive acts or areas of commerce that state and federal laws did not already occupy or regulate. *See id*. Similarly, in *Lloyd*, the Maryland Court of Appeals mentioned the fact that the MCPA provides protection where existing law did not in passing. *See* 397 Md. at 140 (2007). And, in doing so, it paid homage to the General Assembly's desire to provide *broader* protections than what other laws provided. *See id.*, *see also Citaramanis*, 328 Md. at 150 (in enacting the MCPA, "the General Assembly sought to implement strong protective and preventive measures to assist the public in obtaining relief from unlawful consumer practices . . . ."). More to the point, neither decision expressly or impliedly overruled *Legg* and *Luskin's*. Thus, both still remain binding authority on this Court in analyzing the unfairness prong.

[8] Defendants also cite numerous federal cases involving allegations of deception which do not implicate the unfair prong of the MCPA as applied by *Sager* and the Court of Special Appeals. *See Attorney General v. Dickson*, 717 F. Supp. 1090, 1093 (D. Md. 1989) (involving allegations that car dealers deceptively "rolled back" odometer readings on cars they sold to consumers); *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 204 (D. Md. 2012) (involving Defendant's alleged misrepresentations made during loan modification process); *Legore v. One West Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (same); *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464-65 (D. Md. 2013) (same); *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505,

acts only which traditional theories of Maryland law do not prohibit is specious. Were the Court to accept Defendants' invitation to so hold, it would explicitly overrule the plain wording of the statute, its purpose, and the Maryland Court of Special Appeals.

The main purpose of this argument is captured by the often-repeated notion that the surviving claims already "provide adequate remedies in the event that Plaintiffs are able to prove the allegations in the Complaint."  *Cf.* DE #75 at 4, 5. However, as Defendants are well-aware, a Plaintiff is not foreclosed from presenting cumulative claims.  Fed. R. Civ. P. 8(d)(3)("A party may state as many separate claims … as it has…"); *DCT Creekside I, LLC v. Data Exch. Corp.*, 2010 U.S. Dist. LEXIS 25143, 16 (S.D. Ohio Mar. 16, 2010)("DCT is allowed to plead all claims against DEX under which DCT might be entitled to relief.").  The common law claims raised here have different elements requiring different analyses and different remedies.  Thus, Plaintiffs have every right to prosecute an MCPA claim even if other common law claims exist.

The common law doctrine of election of remedies applies where two possible remedies are available for the same legal injury. *Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 292-293 (4th Cir. 2010). The basic purpose of the doctrine is to prevent a plaintiff from obtaining a windfall recovery, either by recovering two forms of relief that are premised on legal or factual theories that contradict one another or by recovering overlapping remedies for the same legal injury.  *Id.*  With the advent of flexible pleading and procedure, like Rule 8(d)(3), the doctrine requires a conclusive election of remedies only where a suit has advanced to judgment.  *Id.*

---

531-32 (D. Md. 2011) (involving alleged misrepresentations concerning fees in a loan agreement). Similarly, the *Lloyd* and *Hoffman v. Stamper* cases specifically dealt with deceptive conduct and did not limit the reach of the MCPA.  *See* 397 Md. at 143; 155 Md. App. 247, 310-311 (2004).

At the proper time, Plaintiffs can elect their remedies to the extent what the jury awards is cumulative.  One remedy which will never be cumulative is the recovery of attorneys' fees.  *See* Prayer for Relief, D.  Only the MCPA, and not the common law claims, explicitly provides for the recovery of Plaintiffs' attorneys' fees.  §13-408(b); *see also Blaylock v. Johns Hopkins Federal Credit Union,* 152 Md. App. 338, 355 (2003).   Plaintiffs are only at the pleading stage and the election of remedies doctrine should not bar reconsideration by the Court of its order dismissing the MCPA claim.

## CONCLUSION

For the reasons discussed above, the arguments Defendants offer in their Opposition to Motion for Reconsideration fail and the Court should grant Plaintiffs' Motion for Reconsideration.


Dated: January 26, 2015

Respectfully Submitted,
 _____ /S/ _____
Dean Park (Fed. Bar No. 30059)
Law Office of Kurt Wolfgang, Chtd.
9375 Chesapeake Street, Suite 113
La Plata, MD 20646
Tel: 301-934-6000
Facsimile: 888-601-2811
deanpark@wolfganglaw.com


Tracy D. Rezvani
**REZVANI & VOLIN P.C.**
1050 Connecticut Avenue, N.W., 10th Floor
Washington, D.C. 20036
Phone:  (202) 350-4270 x101
Fax: (202) 351-0544
trezvani@rezvanivolin.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Plaintiffs' Reply to Defendants'

Opposition to Motion for Reconsideration was served on Counsel for Defendants by ECF when

it was filed.


_____/S/_____
Dean Park